IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
Southern Division

PRIMERICA LIFE INSURANCE
COMPANY,

    Plaintiff,

v.

LESLIE ZAPATA, *et al.*

    Defendants.

Case No.: GJH-14-1202

\* \* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM OPINION

Plaintiff Primerica Life Insurance Company ("Primerica") initiated this litigation as an interpleader action regarding the proceeds from a life insurance policy for the late Lester Foote, and was subsequently counter-sued by the estate of Mr. Foote (the "Estate"), represented by Sandra Foote, Mr. Foote's wife, acting as the Estate's personal representative. ECF No. 104. Specifically, Mrs. Foote's Second Amended Complaint-in-Intervention asserts a claim of negligence against Primerica and seeks $1.4 million in damages. Now pending before the Court is Primerica's Motion for Summary Judgment, ECF No. 139, the Estate's Motion for Prejudgment Interest, ECF No. 116, the Estate's Motion for Extension of Time to Complete FRCP 26(a)(2) Disclosure, ECF No. 117, and Primerica's Cross Motion seeking attorney's fees, ECF No. 118. No hearing is necessary. Loc. R. 105.6 (D. Md. 2016). For the following reasons, Primerica's Motion for Summary Judgment and Cross Motion for attorney's fees are granted, and the Estate's motions for Prejudgment Interest and Extension of Time are denied.

1

I.  **BACKGROUND**[1]

On January 5, 2002, Lester Foote, a master plumber, completed an application for a $1.5 million life insurance policy (the "Policy") from Primerica. *See* ECF No. 48-1 at ¶¶ 12–13. On the application, Mr. Foote designated his daughters, Leslie P. Pineda (now Leslie Zapata), Nancy A. Pineda (now Nancy Zapata), Susana R. Pineda (now Susana Zapata), Jennifer J. Hughes, and his son, Antoine L. Hughes, as principal beneficiaries. *See* ECF No. 1-3 at 10.[2] Under the Policy, each daughter was entitled to receive $250,000 upon Mr. Foote's death and his son was entitled to $200,000. *See id.* Mr. Foote also named his minor goddaughter, MBL, as a principal beneficiary in the 2002 application, entitling her to $100,000 in proceeds from the Policy. *See id.* When Mr. Foote completed the 2002 application, he indicated on the application that these beneficiary designations were irrevocable. *See id.* ¶ 14. Pursuant to the terms of the Policy, a beneficiary designated as irrevocable on an application "may not be changed except with the written consent of that Beneficiary." *Id.*

In December 2010, Mr. Foote met with his Primerica agent, Jane Williams, in Philadelphia and discussed the possibility of adding Sandra Foote, whom he had married on March 31, 2010, to the Policy. ECF No 139-4 at 4–5. On December 17, 2010, Mr. Foote submitted a Policy Change Application to Primerica, listing Mrs. Foote and MBL as the only beneficiaries but with no specific dollar amount assigned to either beneficiary. ECF No. 1-4. Prior to submitting this Application, Mr. Foote did not obtain the written consent of the irrevocable beneficiaries, as required under the Policy. Upon receiving the Policy Change

---

[1] The facts relied on herein are either undisputed or viewed in the light most favorable to the non-movant. Additionally, for reasons discussed in more detail below, certain statements made by Mr. Foote will be deemed admissible and are included in this background section. Statements deemed inadmissible by the Court are not referenced herein.

[2] Pin cites to documents filed on the Court's electronic filing system (CM/ECF) refer to the page numbers generated by that system.

2

Application, Primerica sent a letter to Ms. Williams informing her that the Application was insufficient to change Mr. Foote's policy. ECF No. 139-11. Ms. Williams discussed with Mr. Foote that his Application had not been processed, and told him that he would need to obtain the written consent of the existing beneficiaries if he wanted to change the policy. Mr. Foote said that he wanted to think about what he was going to do, and that he would "get around to it." ECF No. 139-4 at 9–10. Mr. Foote did not submit a subsequent Policy Change Application; but, on October 17, 2012, he executed a Revised Operating Agreement for his business (an LLC), which gave Mrs. Foote and her son joint tenancy and right of survivorship over 65% and 35% of the LLC, respectively. ECF No. 139-13.

Ultimately, Mr. Foote died unexpectedly without a will on December 26, 2013. *See* ECF No. 1 ¶ 19. Following his death, Primerica filed the instant interpleader complaint so that Mr. Foote's various beneficiaries and family members could present their claims to the proceeds of the Policy.

In response to the interpleader complaint, Mrs. Foote and MBL filed counterclaims against Primerica for breach of contract, negligence, and estoppel. *See* ECF No. 46; ECF No. 48. On March 16, 2015, the Court granted Primerica's Motion to Dismiss those counterclaims, but allowed the Estate to intervene, and suggested that it was possible that the Estate could bring a claim against Primerica. *See* ECF No. 68 at 12 n.7. The Estate subsequently brought a complaint, ECF No. 71, which was amended twice, ECF No. 76; ECF No. 104. In its most recent version, the complaint alleges that Primerica was negligent in failing to add Mrs. Foote to Mr. Foote's insurance policy, and seeks $1.4 million in damages (the amount that Mrs. Foote allegedly would have received under a revised policy). ECF No. 104. On September 15, 2016, the Estate filed a Motion for Prejudgment Interest, alleging that Primerica owed interest on the life insurance

proceeds as it had not deposited them in the Court's registry. ECF No. 116. On September 19, 2016, the Estate filed another motion, requesting an extension of time to complete its Fed. R. Civ. P. 26(a)(2) disclosure. ECF No. 117. On October 3, 2016, Primerica filed a cross-motion requesting, among other things, attorneys' fees. ECF No. 118. On December 15, 2016, pursuant to a stipulation between the parties, the entirety of the insurance proceeds were deposited with the Court, and the Interpleader Defendants agreed to have the funds distributed amongst themselves, with an appropriate amount held back to cover potential attorney's fees and estate taxes. ECF No. 132. Primerica has since moved for summary judgment on the negligence claim, arguing that there are no disputed material facts, and that Primerica is entitled to judgment as a matter of law. ECF No. 139.

For the reasons stated below, the Court finds that Primerica is entitled to judgment as a matter of law on the Estate's negligence claim. After resolving the motion for summary judgment, the Court will address the remaining motions.

## II. LEGAL STANDARD

Summary judgment is appropriate if the "materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . ., admissions, interrogatory answers, or other materials," Fed. R. Civ. P. 56(c), show that there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The party moving for summary judgment bears the burden of demonstrating that no genuine dispute exists as to material facts *Pulliam Inv. Co. v. Cameo Props.*, 810 F.2d 1282, 1286 (4th Cir. 1987). If the moving party demonstrates that there is no evidence to support the non-moving party's case, the burden shifts to the non-moving party to identify specific facts showing that

4

there is a genuine issue for trial. *See Celotex*, 477 U.S. at 322–23. A material fact is one that "might affect the outcome of the suit under the governing law." *Spriggs v. Diamond Auto Glass*, 242 F.3d 179, 183 (4th Cir. 2001) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A dispute of material fact is only "genuine" if sufficient evidence favoring the nonmoving party exists for the trier of fact to return a verdict for that party. *Anderson*, 477 U.S. at 248. However, the nonmoving party "cannot create a genuine issue of material fact through mere speculation or the building of one inference upon another." *Beale v. Hardy*, 769 F.2d 213, 214 (4th Cir. 1985). With this standard in mind, the Court turns to Primerica's motion for summary judgment and the evidentiary rulings needed to resolve the motion.

## III. DISCUSSION

### A. Evidentiary Determinations

As an initial matter, both parties allege that evidence relied on by the other party is inadmissible. *See* ECF No. 142 at 10; ECF No. 147 at 6. When ruling on a motion for summary judgment, courts must ensure that "affidavits must be made on personal knowledge with such facts as would be admissible in evidence." *United States v. Hartford Accident & Indem. Co.*, 168 F. Supp. 3d 824, 831 (D. Md. 2016) (citing Fed. R. Civ. P. 56(c)(4)).

Here, the Estate asserts that there are three pieces of evidence relied upon by Primerica that are hearsay and inadmissible under Md. Code Ann., Cts. & Jud. Proc. § 9-116, commonly known as Maryland's Dead Man Statute. Each piece of evidence comes from the affidavit of Primerica's agent, Ms. Williams, and consists of a statement allegedly made by Mr. Foote. The statements objected to are:

- *"Lester Foote discussed with Ms. Williams possibly making a change to his Primerica Policy so that Sandra Foote, whom he had married on March 31, 2010, would receive some benefit from the policy."*

5

- *"They discussed making a change so that Ms. Foote would receive the $200,000 that had not previously been assigned to any beneficiary on the initial application."*

- "On December 23, 2010, Primerica sent a letter to Ms. Williams informing her that changes could not be made based upon the Policy Change Application that it had received. See Ex. H. Ms. Williams discussed the letter with Lester Foote. Ex. A at 59. She told Lester Foote that if he wanted to make Sandra Foote the beneficiary of the Primerica Policy, he would need to have the existing beneficiaries consent in writing to being removed from the Primerica Policy. Id. at 66- 67. *Mr. Foote explained that he wanted to think about what he was going to do and that he would get around to it."*

ECF No. 142 at 10–11 (emphasis in original).

Similarly, Primerica argues that "Sandra Foote's [deposition] testimony regarding what Lester Foote allegedly said to Jane Williams in the summer of 2011and in 2013 after the death of Mr. Foote's mother is inadmissible under Maryland's Dead Man's Statute." ECF No. 147 at 6.

The Court addresses the parties' arguments under Maryland's Dead Man Statute first, and then turns to the Estate's hearsay arguments.

### 1. Application of Maryland's Dead Man Statute

Maryland's Dead Man Statute provides that:

A party to a proceeding by or against a personal representative, heir, devisee, distributee, or legatee as such, in which a judgment or decree may be rendered for or against them, or by or against an incompetent person, may not testify concerning any transaction with or statement made by the dead or incompetent person, personally or through an agent since dead, unless called to testify by the opposite party, or unless the testimony of the dead or incompetent person has been given already in evidence in the same proceeding concerning the same transaction or statement.

Md. Code Ann., Cts. & Jud. Proc. § 9-116 (West). "The purpose of the dead man's statute is to seal the lips of a party in a proceeding 'by or against' a personal representative [of the decedent] about facts that could be disputed only by the deceased." *Farah v. Stout*, 684 A.2d 471, 475 (1996). Recognizing the potential for creating injustice, Maryland courts have applied this rule to "render[] as much testimony as possible admissible while preventing self-interested perjury," and have imposed a number of restrictions on this rule. *Reddy v. Mody*, 388 A.2d 555, 558–60

6

(1978). First, Maryland courts have restricted the application of this rule to proceedings involving a "cause which would tend to increase or diminish the Estate of the decedent by establishing or defeating a cause of action by or against the estate." *Id.* at 559. Second, the individual seeking to provide testimony–the "party"–must be someone who has "an interest in the property sought or a person having a direct pecuniary and proprietary interest in the outcome of the case." *Id.* at 560 (citing *Trupp v. Wolff*, 335 A.2d 171 (1975)). Third, in order to determine whether the testimony being provided concerns a "transaction with or statement made" by the deceased, Maryland courts look to whether "the decedent, if living, could contradict such testimony of his or her own knowledge." 23 M.L.E. Witnesses § 24 (citing *Ridgley v. Beatty*, 159 A.2d 651 (Md. 1960); *Boyd v. Bowen*, 806 A.2d 314 (Md. Ct. Spec. App. 2002); *Reddy v. Mody*, 388 A.2d 555 (Md. Ct. Spec. App. 1978); *Midler v. Shapiro*, 364 A.2d 99 (Md. Ct. Spec. App. 1976)).

Following this approach, the Court will not consider the statements from Mrs. Foote's deposition and interrogatories relied upon by the Estate. First, this is clearly a proceeding "by or against a personal representative" of Mr. Foote that could "increase or diminish the estate of the decedent by establishing or defeating a cause of action by or against the estate." Specifically, Mrs. Foote is acting as the representative of the Estate and seeks $1.4 million on its behalf, an obvious increase. ECF No. 104 at 13. Second, Mrs. Foote is a "party" for the purposes of the Dead Man Statute. Mrs. Foote alleges that the $1.4 million she seeks was intended to be distributed to her, and the majority of any judgment in the Estate's favor would almost certainly be received personally by Mrs. Foote. *See* ECF No. 104 at 12. Therefore, Mrs. Foote clearly "has an interest in the property sought" and has a "direct pecuniary and proprietary interest in the

outcome of the case."[3] Finally, the statements that the Estate seeks to introduce are clearly "statements" under the Dead Man Statute, as Mr. Foote–were he alive–would be able to dispute or affirm their occurrence. Therefore, the proffered statements of Mr. Foote as relayed by Mrs. Foote are inadmissible under Maryland's Dead Man Statute, and will not be considered for purposes of Primerica's motion.

Conversely, the Court will consider the proffered statements of Mr. Foote as relayed by Ms. Williams. While this is a proceeding by or against a personal representative of Mr. Foote and the proffered testimony consists of "statements" by Mr. Foote, Ms. Williams–Primerica's employee–is not an interested "party" for purposes of the Dead Man Statute. Although Primerica is a named party here, Maryland law is clear that employees or agents of a corporate party are not themselves interested parties, and will not be disqualified as witnesses. *See, e.g., Stout v. Home Life Ins. Co.*, 651 F. Supp. 28, 31 (D. Md. 1986), *aff'd*, 818 F.2d 29 (4th Cir. 1987) (in ruling on summary judgment in an insurance case, court considered the testimony of an insurance agent who had submitted the relevant insurance applications for the insured, reasoning that "it is therefore well established that an officer, director, shareholder or employee of a corporate party to a cause of action is not disqualified as a party from testifying under the Dead Man's Statute."); *Reddy v. Mody*, 388 A.2d 555, 560 (Md. 1978) (finding witness "competent to testify" under Dead Man's Statute who was "merely an employee of a corporation which was a party"). Although Primerica is a named party, Ms. Williams was "merely an employee" of Primerica, and there is no evidence that she personally has a "direct pecuniary and proprietary

---

[3] Although not dispositive, the Court further notes that Mrs. Foote was a named party in the original complaint, providing further support for her status as a "party" here. *See Farah v. Stout*, 684 A.2d 471, 476 (1996) (in applying Maryland's Dead Man Statute to preclude testimony from an individual who had previously been a named party, reasoning that "[a]lthough [the individual offering testimony] was no longer a named party in the legal proceeding, we simply cannot ignore the fact that he was . . . a party in the original complaint").

8

interest in the outcome of the case." As such, the Dead Man's Statute does not apply to her proffered testimony of Mr. Foote's statements.

### 2. Hearsay Determinations

Even if the Dead Man's Statute does not bar the testimony of Ms. Williams regarding conversations with Mr. Foote, the Estate contends that the statements being proffered are inadmissible hearsay evidence. *See* ECF No. 142 at 10. However, none of these statements are offered for the truth of the matter asserted. *See* Fed. R. Civ. P. 801(c).

The first and second statements regarding conversations about Mr. Foote's desire to make Mrs. Foote a beneficiary are not offered to show the truth of the statements, but rather to show that the conversations happened and Ms. Williams' understanding of Mr. Foote's intentions. Similarly, the third statement, regarding the need to get approval from existing beneficiaries, is not offered to show that Mr. Foote would actually think about obtaining the written consent of the existing beneficiaries, or that he would actually get around to obtaining the consent; rather, this statement is offered for the effect it had on Ms. Williams, and whether she understood that Mr. Foote expected her to obtain the written consents. As such, none of the three statements are inadmissible hearsay. *Cf. Arrington v. E.R. Williams, Inc.*, 490 Fed. Appx. 540, 543 (4th Cir. 2012) (affirming district court's reliance on out-of-court statements in granting summary judgment motion where statements were not offered "to prove the truth of the matter asserted," but were offered to show the rationale behind non-declarant's subsequent actions).

Having applied the Dead Man's Statute and applicable hearsay rule, the Court will not consider the proffered statements of Mr. Foote from Mrs. Foote's deposition and interrogatory responses, but will consider the proffered statements of Mr. Foote from Ms. Williams'

deposition. With this in mind, the Court next examines whether Primerica is entitled to judgment as a matter of law.

### B. Primerica is entitled to judgment as a matter of law as there is no genuine dispute of material fact regarding the Estate's negligence claim

To establish a claim of negligence, a plaintiff must demonstrate: (1) that the defendant owed a duty to the plaintiff; (2) that the defendant breached that duty; (3) that the plaintiff suffered damages or injury; and, (4) that the defendant's breach proximately caused the damages or injury that the plaintiff suffered. *Evergreen Associates, LLC v. Crawford*, 75 A.3d 1038, 1042–43 (Md. 2013).[4] Because the Estate cannot produce evidence to establish that Primerica breached a duty to the Estate, or that the Estate suffered damages, the Court will grant summary judgment for Primerica.

#### 1. Ms. Williams did not undertake a duty to replace the irrevocable beneficiaries on Mr. Foote's insurance policy

It is undisputed that Ms. Williams discussed with Mr. Foote the fact that he would need to obtain the consent of the existing irrevocable beneficiaries to remove them from the policy. ECF No. 139-4 at 9. Once Mr. Foote filled out the Policy Change Application, Ms. Williams submitted the Application to Primerica, and received a letter in response informing her that the Policy Change Application did not contain sufficient information to execute a change. ECF No. 139-11 at 2. She subsequently informed Mr. Foote that the Policy Change Application had not been processed, and that he would need to obtain written consent of the existing irrevocable beneficiaries in order to make Mrs. Foote the beneficiary of the policy. ECF No. 139-4 at 9. Mr. Foote told Ms. Williams that he would "get around to it," and that he "wanted to think about what he was going to do with his children . . . and he did not want to go to them and ask them to

---

[4] Consistent with this Court's March 16, 2015 decision, the Court applies Maryland law in assessing the Estate's negligence claim. *See* ECF No. 68 at 8 n.4.

10

sign off being beneficiaries . . . to take away their money." *Id.* at 10. There is no evidence that Mr. Foote ever asked Ms. Williams to contact the existing irrevocable beneficiaries to obtain their written consent, and there is no evidence that Mr. Foote ever told Ms. Williams that he had made up his mind to remove his children as beneficiaries.

The Estate's negligence claim alleges that "based upon the contention that Jane E. Williams, acting as an agent on behalf of Primerica, volunteered to undertake an obligation to fulfill Lester Foote's expressed desire to make his wife, Sandra Foote, the principal beneficiary of [his life insurance policy]." ECF No. 142 at 4. But there is no admissible evidence to support the allegation that she took on such an obligation. Indeed, there is evidence that Mr. Foote told Ms. Williams that he was unsure what he wanted to do. As such, Ms. Williams did not owe Mr. Foote a duty.[5]

### 2. Even if there was a duty, Ms. Williams did not breach the duty

Even if Primerica and Ms. Williams had a duty to execute the change that Mr. Foote allegedly desired (to have Mrs. Foote added to the policy), there is no dispute that Primerica and Ms. Williams acted reasonably. *See, e.g., Schlossberg v. B.F. Saul Insurance Agency of Md., Inc.*, 148 F. Supp. 3d 462, 470 (D. Md. 2015) (in assessing negligence claim by insured against insurance broker, reasoning that under Maryland law the broker "owes a duty to exercise reasonable care and skill in performing his duties"). Prior to submitting the Policy Change Application, Ms. Williams informed Mr. Foote that he would need to obtain written consent from the existing irrevocable beneficiaries if he wanted to remove them from his policy. This

---

[5] The estate cites Maryland and D.C. law for the propositions that an insurer who "undertakes to procure insurance for another," *Zitelman v. Metropolitan Ins. Agency*, 482 A.2d 426, 428 (D.C. 1984), or who "is employed to obtain a policy that covers certain risk," *Int'l Broth. Of Teamsters v. Willis Corroon Corp. of Md.*, 802 A.2d 1050, 1057 (Md. 2002), owes a duty to reasonably procure such insurance. ECF No. 142 at 5. Here, however, there is no evidence that Mr. Foote ever "employed" Primerica to obtain a policy naming Mrs. Foote as the primary beneficiary, or that Ms. Williams "undert[ook]" the obligation to do so.

11

was consistent with the Policy that Mr. Foote signed. The Policy Change Application that Mr. Foote submitted to Primerica did not include such consent, and Primerica understandably reached out to Ms. Williams for further clarification. Upon learning that the Policy Change Application had not been accepted by Primerica, Ms. Williams informed Mr. Foote of this development, and again told him that he would need to obtain written consent from the existing irrevocable beneficiaries. Mr. Foote told Ms. Williams that he was unsure what he wanted to do regarding the existing beneficiaries, but he would "get around to" making a decision. There is no evidence that Mr. Foote gave her any further directions.

The Court does not find anything unreasonable in Primerica's or Ms. Williams' conduct. Mr. Foote's insurance policy expressly designated his existing beneficiaries as "irrevocable," meaning they could only be removed with their written consent. When Mr. Foote submitted a Policy Change Application without the required written consent, it was reasonable for Primerica to deny this request. It was further reasonable for Ms. Williams to consult Mr. Foote regarding his intentions, and for her not to take any further actions when Mr. Foote expressed his uncertainty regarding the removal of the existing beneficiaries. In fact, the expert witnesses for both the Estate and Primerica agreed that Ms. Williams would have had a duty to contact the existing beneficiaries only if Mr. Foote had asked her to do so; the expert witnesses further agreed that there was no evidence that Mr. Foote had made such a request. *See* ECF No. 139-17 ¶ 9; ECF No.139-18 at 135.

As such, even if Ms. Williams or Primerica owed a duty to Mr. Foote, the Court finds no evidence on the record that they breached their duty.

**C. Even if this Court were to find that Primerica or its agent owed the Estate a duty and breached that duty, the Estate did not suffer any damages**

Even if Primerica or Ms. Williams breached a duty to the Estate, the claim would fail because the Estate cannot demonstrate that it suffered any damages.

The Estate alleges economic damages of $1.4 million. ECF No. 104 ¶ 68. As support for this monetary amount, the Estate contends that it "has an interest in the proper execution of . . . Mr. Foote's intentions upon his death and suffers actual harm should those intentions fail to be executed," and that "[t]he Estate may be forced to pay taxes for the benefit of individuals that Mr. Foote did not intend to benefit." ECF No. 142 at 8. On the first point, the Estate does not cite any authority supporting the contention that "actual harm" has occurred because the insurance policy may have been mis-executed. On the second point, the Estate contends that it "may" be forced to pay taxes for the "wrong" individuals, but does not allege that it must pay an increased or decreased amount of taxes; in fact, the Estate alleges that Mr. Foote wanted to have an identical $1.5 million life insurance policy–albeit for the benefit of Mrs. Foote–and so the Estate would have been required to pay the same amount of estate taxes regardless of the beneficiary. The Estate simply has not alleged or demonstrated that it suffered any actual monetary or non-monetary damages, and the negligence claim fails for this reason as well.[6]

**D. The Court also grants judgment on Count II as the issue is moot**

As the Estate's negligence action (Count I of the Second Amended Complaint) cannot survive Primerica's motion for summary judgment, the Court will also grant judgment on Count II of the Second Amended Complaint, the Estate's claim for declaratory relief. ECF No. 104 at

---

[6] The Court acknowledges the possible tension with its previous ruling on Mrs. Foote's personal negligence claim against Primerica. ECF No. 68. There, the Court ruled that Mrs. Foote did not have a cognizable negligence claim, as neither Primerica nor Ms. Williams owed a duty to Mrs. Foote–any duty would have been owed to Mr. Foote, and a negligence claim would have to be brought by the Estate. Having now reviewed the evidence on the record, it appears that while Mrs. Foote was not owed a duty, the Estate has not suffered damages.

13

12. Count II asks the Court to "declare that before any insurance proceeds are distributed to a beneficiary, the pro rata share of D.C. estate taxes chargeable to such proceeds should be deducted and paid to the Estate." *Id.* at 13. However, the insurance proceeds have already been distributed to the beneficiaries, with an agreed upon amount held back for the payment of taxes, *see* ECF No. 132, ECF No. 135, ECF No. 136, and the Estate will not be receiving any additional funds. As such, the Court finds that Count II is moot. *See Duane v. Government Employees Ins. Co.*, 784 F. Supp. 1209, 1213 (D. Md. 1992) (reasoning that a case requesting declaratory judgment "can become moot when the issues presented are no longer 'live'" (internal quotations omitted)).

### E. Motion for Prejudgment interest

Having granted summary judgment for Primerica, the Court now resolves three outstanding motions. First, the Estate seeks prejudgment interest, and alleges that Primerica did not deposit the proceeds from the insurance policy "in a timely manner" but "retained possession and beneficial use of the $1,500,000 in death proceeds up through" the time of filing, on September 15, 2016.[7] ECF No. 116 at 2. Primerica responds that it is not obligated to pay prejudgment interest as an interpleader that did not unreasonably delay in filing the interpleader. ECF No. 118-1 at 9. Primerica further contends that any delay between Mr. Foote's death and the distribution of the policy proceeds "was caused by [Mrs. Foote's] failure, for nearly two years, to articulate an actionable claim . . . ." *Id.*

Generally, an insurance company in Primerica's position "should be allowed without application of interest a reasonable time to determine whether there are adverse claims of substance and to prosecute any appropriate interpleader action in view of such determination."

---

[7] Primerica ultimately deposited the proceeds with the Court on December 15, 2016.

14

*Powers v. Metro. Life Ins. Co.*, 439 F.2d 605, 608 (D.C. Cir. 1971).[8] Still, "unreasonable delay or failure on the part of a stakeholder in depositing the funds in court may subject it to liability for interest on the funds." *Id.* An award of prejudgment interest in interpleader actions is not "automatically allowed" but "should depend upon equitable considerations." *Id.* at 609. Where courts are satisfied that the insurer "acted reasonably expeditiously" in investigating competing claims, and "acted in good faith," they will typically not grant prejudgment interest. *Aetna Life Ins. Co. v. Outlaw*, 411 F. Supp. 824, 827 (D. Md. 1976) (finding that insurer acted reasonably even though twenty-one months elapsed between the date the insurer learned of the insured's death and the commencement of the interpleader suit).

Here, the Court finds that Primerica acted reasonably and in good faith in investigating the competing claims for Mr. Foote's insurance proceeds, and denies the Estate's request for prejudgment interest. The Estate does not contest that Primerica filed this interpleader action ninety days after learning of Mr. Foote's death, during which time Primerica "sent out and reviewed claim forms, communicated with counsel for both Sandra Foote and the Interpleader defendants and provided them with documents from its file, and reviewed the contents of its file to determine whether an effective change to the Primerica Policy beneficiaries had been made." ECF No. 118-1 at 10. Neither does the Estate contend that Primerica acted in bad faith; instead, the Estate argues that Primerica "persistent[ly] refus[ed] to deposit the funds into the Court registry . . . ." ECF No. 125 at 2. However, the Estate can point to only a single instance in which the Estate requested that Primerica deposit the insurance proceeds and Primerica refused to do so. ECF No. 116 at 2. The Court finds that Primerica did not unreasonably delay depositing the

---

[8] Consistent with this Court's March 16, 2016, opinion, the Court applies District of Columbia law in evaluating claims regarding the insurance contract. *See* ECF No. 68 at 5 n.1.

15

insurance proceeds with the Court, and therefore denies the Estate's request for prejudgment interest.

### F. Primerica's request for attorney's fees

The Court next turns to Primerica's outstanding request for its attorney's fees and costs to be deducted from the insurance funds. ECF No. 118-1. Primerica claims that as a disinterested stakeholder, it is entitled to recover its attorney fees and costs associated with its efforts in initiating the interpleader suit. ECF No. 118-1 at 6.

"[I]t is within the discretion of the court to award the [interpleader] costs including a reasonable attorneys' fee out of the deposited fund." *Wells Fargo Bank, N.A. v. Eastham*, No. CV DKC 16-0386, 2016 WL 2625281, at *4 (D. Md. May 9, 2016) (citing *Coppage v. Ins. Co. of North America*, 263 F.Supp. 98, 100 (D. Md. 1967)); *see also Bank of Am., N.A. v. Jericho Baptist Church Ministries, Inc.*, No. PX 15-02953, 2017 WL 319521, at *1 (D. Md. Jan. 23, 2017) (noting that "[t]he Court retains broad discretion to award the stakeholder its costs, including reasonable attorneys' fees, out of the deposited fund."). The rationale is that "[b]ecause the stakeholder is considered to be helping multiple parties to an efficient resolution of the dispute in a single court," granting attorneys' fees to the stakeholder is often justified. *Stonebridge Life Ins. Co. v. Kissinger*, 89 F. Supp. 3d 622, 627 (D.N.J. 2015)). Attorneys' fees and costs are, however, appropriate only when the interpleader plaintiff acts "as a mere stakeholder, which means that the party has admitted liability, has deposited the fund in court, and has asked to be relieved of any further liability." *Jericho*, 2017 WL 319521, at *1 (citing 7 Charles Alan Wright et al., Federal Practice and Procedure § 1719 (3d ed. 2001)).

Additionally, "[w]hen an award of costs and attorneys' fees to a stakeholder in a successful interpleader action is equitable, it should also be modest." *Jericho*, 2017 WL 319521,

16

at *2. "By its very nature [an interpleader fee] is of a relatively small amount simply to compensate for initiating the proceedings." *Id.* (citing *Ferber Co. v. Ondrick*, 310 F.2d 462, 467 (5th Cir. 1962)). In general, a stakeholder's ability to recoup attorneys' fees and costs is limited, because the interpleader process "does not usually involve any great amount of skill, labor or responsibility." *Id.* (citing *Lewis v. Atlantic Research Corp.*, No. 98-0070-H, 1999 WL 701383, at *7 (W.D. Va. Aug. 30, 1999)). An award of attorneys' fees should be "properly limited to the preparation of the petition for interpleader, the deposit of the contested funds with the court, and the preparation of the order discharging the stakeholder." *Id.*

The Estate contends that Primerica is not a "disinterested stakeholder" as it "failed to deposit the funds into the Court registry at the time of filing its interpleader action . . . ." ECF No. 125 ¶ 6. The Estate does not explain how this makes Primerica a disinterested stakeholder. Regardless, as the Court has already determined that Primerica did not unreasonably delay in filing the interpleader action or depositing the funds, it will grant Primerica's request for attorney's fees. However, the Court limits the amount of attorney's fees to those incurred in initiating the interpleader action, depositing the insurance proceeds with the court, and preparing the order discharging Primerica; Primerica will not be able to collect all fees which Primerica incurred defending against Mrs. Foote's breach of contract and negligence claims, as well as the Estate's negligence and prejudgment interest claims. Pursuant to this Order, Primerica shall file a detailed summary of its fees and costs incurred no later than thirty days following this Order, so the Court may further determine the appropriate amount of attorney's fees.

### G. Motion for Extension of Time to Complete Fed. R. Civ. P. 26(a)(2) Disclosure (ECF No. 117)

Finally, pending before the Court is the Estate's Motion for Extension of Time to Complete its Rule 26(a)(2) disclosure. The Court will dismiss this motion as moot. As all claims

17

have been settled or will be dismissed through this Order, the Estate need not prepare a Rule 26(a)(2) disclosure.

## IV. CONCLUSION

For the foregoing reasons, Primerica's Motion for Summary Judgment, ECF No. 139, shall be granted, Primerica's request for attorney's fees, ECF No. 118, shall be granted in part, and the Estate's Motion for Prejudgment Interest, ECF No. 116, and Motion for Extension of Time, ECF No. 117, shall be denied. A separate Order follows.

Dated: September 7, 2017

GEORGE J. HAZEL
United States District Judge

18